IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KMART CORPORATION, et al.,

*Plaintiffs*

v.

DOW ROOFING SYSTEMS, LLC, STEVENS
ROOFING SYSTEMS, DOES I-X, ABC
INSURANCE COMPANIES, and any other
joint tortfeasors.

*Defendants*

CIV. NO. 12-1679 (PG)

**OPINION AND ORDER**

Plaintiff Kmart Corporation ("Kmart") brought suit against defendant Dow Roofing Systems, LLC ("Dow Roofing") relating to allegedly defective materials and workmanship in connection with a roof installation at a Kmart store located in Los Colobos Shopping Center in Carolina, Puerto Rico. See Docket No. 1. On November 20, 2012, defendant Dow Roofing filed the Motion to Dismiss that is now before the Court. See Docket No. 7. In the document, defendants request the Court's dismissal of the action pursuant to the Federal Arbitration Act and on *res judicata* grounds.

Having considered the issues and arguments raised by both parties, the Court **GRANTS** Defendants' Motion to Dismiss.

**I.   BACKGROUND**

The procedural history of this case is succinct. Plaintiffs filed the Complaint on August 20, 2012. See Docket No. 1.  On November 20, 2012 Dow Roofing filed the Motion to Dismiss (Docket No. 7). Plaintiffs' Opposition followed on December 21, 2012 (Docket No. 12). Kmart replied to plaintiff's opposition (Docket No. 16) and plaintiffs filed a surreply (Docket No. 19).

Through their Motion to Dismiss, defendants made a request to compel arbitration. Accordingly, the recitation of facts is drawn from the Complaint as well as the documents submitted in support of the Motion to Dismiss. The facts are undisputed.

On January 13 2006, Kmart and Stevens Roofing Systems signed a Construction Contract (the "Construction Contract") to have a single-ply

membrane roof installed on property owned by Kmart and located at Plaza Los Colobos, 65th Infantry Avenue, Carolina, Puerto Rico. See Docket No. 1 at ¶9-10.

Stevens Roofing Systems ("Stevens Roofing") later became known as Dow Roofing. See Docket No. 7 at pg. 3.

The Construction Contract specified that any bid qualification or condition contained in any document not expressly listed or incorporated by reference was rejected and not a part of the agreements between the parties. See Docket No. 12-1 at ¶2.

As a part of the bid and contract documents, the parties agreed that Dow Roofing would issue a ten (10) year warranty for labor and material that was not limited by any dollar amount. See Docket No. 1 at ¶11.

Through the months of April and May 2006, Dow Roofing installed the single-ply membrane roof at Kmart. See Docket No. 1 at ¶14.

On October 11, 2006, upon conclusion of the roof installation, Kmart entered into a limited warranty contract with Stevens Roofing ("the Warranty"). See Docket No. 7-2.

Subsequent to the installation of the roof and before the expiration of the agreed upon ten (10) year warranty, the roof experienced leaking. See Docket No. 1 at ¶17.

On or about August 23, 2011, Kmart began to experience additional water leakage from the single-ply membrane roof. See Docket No. 1 at ¶19.

Kmart complained and notified Dow Roofing of the situation. See Docket No. 1 at ¶21.

On August 20, 2012, Kmart filed the Complaint claiming that the leaks "have been caused by the Defendants' use of defective materials and/or the Defendants' improper installation and repair of the single-ply membrane roof." See Docket No. 1 at ¶23.

## II.   DISCUSSION
### A. FEDERAL ARBITRATION ACT

We treat Dow Roofing's request to dismiss the breach of contract claim on the ground that the claim is subject to arbitration as a request for an order compelling arbitration. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010) (citing Fit Tech, Inc. v. Bally Total

Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir.2004) (treating a motion to dismiss based on an arbitration clause as a request to compel arbitration where the appellant had clearly invoked the arbitration clause contained in the agreement between the parties)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (1994 & Supp. I 2001) applies in diversity actions where there is a written agreement to arbitrate a dispute and that dispute arises out of a "transaction involving commerce." See 9 U.S.C. §§ 1-2; Bowlby v. Carter Mfg. Corp., 138 F. Supp. 2d 182, 187 (D. Mass. 2001). Pursuant to the FAA, "commerce" includes interstate, territorial or foreign commerce, 9 U.S.C. § 1.

In deciding a motion to compel arbitration, a court must ascertain whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." See Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir.2008). As the Supreme Court has explained, it is a "fundamental principle that arbitration is a matter of contract." See Rent-A-Center v. Jackson, 561 US 63 (2010).

Our first inquiry is whether an arbitration agreement exists. As with any contract, the existence of an arbitration agreement depends on the parties' intentions. McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). In order to conduct the analysis, the Court must look to Puerto Rico law in the matter of contracts because general principles of state contract law control the determination of whether a valid agreement to arbitrate exists. See Soto-Fonalledas v.Ritz-Carlton, 640 F.3d 471, 475 (1st Cir. 2011).

Under Puerto Rico law, the following three elements must be satisfied for a valid contract to exist: (1) consent of the contracting parties; (2) a definite object which may be the subject of the contract and (3) a cause for the obligation which may be established. 31 P.R. Laws Ann. tit. 31, §§3391 (2008).

It is undisputed that Kmart entered into a Warranty with Dow Roofing. See Docket No. 7-2. The Warranty contains the following arbitration provision:

> Any controversy or claim arising out of or relating to this document, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry

>     Rules of the American Arbitration Association at the
>     Boston, Mass., Regional Office and judgment upon the award
>     rendered by the Arbitrators may be entered in any court
>     having jurisdiction thereof.

See Docket No. 7-2 at ¶12.

The parties' divergent views center on the validity of the arbitration clause included in the Warranty. Kmart alleges that the Construction Contract includes all the terms agreed upon by the parties and specifically states that: "[b]id qualifications or conditions (and any other terms or conditions) contained in any proposal letter or other document from Contractor not expressly listed or incorporated by reference in Paragraph 6 hereof (Special Conditions) are hereby rejected and are not a part of the contract between the parties." See Docket No. 12-1 at ¶2. It is worth noting that Paragraph 6 contains no "Special Conditions." See Docket No. 12-1 at ¶6. Hence, Kmart posits, the Warranty's arbitration clause constitutes an additional term that was not negotiated by the parties and was, in fact, rejected via the Construction Contract.[1]

After conducting our review of the agreements between the parties, we disagree with Kmart's restrictive reading of the Construction Contract and the Warranty. In reaching this conclusion, we look into the parties' intentions as reflected into the written instrument "construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." See Pelletier v. Yellow Transport, Inc., 549 F.3d 578, 581-82 (1st Cir. 2008)(citing Biddeford Internet Corp. v. Verizon New Eng., Inc., 456 F.Supp.2d 165, 171-72 (D.Me.2006)). In construing the agreement between the parties the Court is also mindful of the strong federal policy favoring arbitration.

The Construction Contract provides that Dow Roofing would issue a ten-year Labor and Material Warranty to Kmart to "cover all work items installed by the roofing contractor, whether or not those items are covered by the manufacturer's warranty." See Section 1.07(A) of Docket No. 12-1. Also, the "Scope of Work" section of the Construction Contract provides that "[u]pon completion and final acceptance of the roof by the

---

[1] Aside from the arbitration clause, Kmart does not challenge any other term or condition contained in the Warranty.

Manufacturer and the Kmart Corporation, a ten (10) year, no-dollar restricted labor and material warranty shall be issued to the Kmart Corporation." See Docket No. 12-1 at pg. 25.

The parties thus contemplated that Dow Roofing would issue the Warranty after Kmart accepted the roof installation. Implicitly, then, the parties acknowledged that the terms of the Warranty would not be part of the Construction Contract itself but would be in effect after the Construction Contract was signed and through a separate document.

Consequently, once the work was completed and accepted, Dow Roofing issued and signed the Warranty which was also signed by Kmart through Frederick Stoyle, Regional Facility Manager. See Docket No. 7-2. Kmart has not disputed that it accepted the installation and signed the Warranty.

Moreover, the Construction Contract contains no language regarding dispute resolution and thus, the arbitration clause included in the Warranty is not at odds with the provisions contained in the Construction Contract. Similarly, in the case of Pelletier, the plaintiff argued that a Dispute Resolution Clause she had signed contemporaneously with an Application for Employment was unenforceable because the latter contained a merger clause. The Court found that the merger clause contained in the Application, which precluded agreements over the parties' right to terminate employment, did not nullify the Dispute Resolution Agreement which only dealt with the mechanism for resolving disputes.

A similar distinction can be drawn in the present case. The Construction Contract precludes any "bid qualification" or "condition" from the Contractor included in any other document. The Warranty, however, is a separate, stand-alone instrument that does not incorporate bid qualifications or conditions regarding the scope of the Construction Contract itself, which is the installation of the single-ply membrane roof. The Warranty deals with the remedies available to Kmart in case of leaks caused by defects in the roofing materials or in the installation. The fact that the Construction Contract includes a merger clause does not override the validity of the Warranty which was issued separately and in accordance with the parties' agreements.

Having found that the parties consented to the Warranty, the Court looks into whether there is a definite cause for the obligation.

Kmart alleges that the Warranty lacks consideration because it does not give Kmart "any new rights." See Docket No. 12 at pg. 6. The rationale is that since the Construction Contract already provides that Dow Roofing would issue a warranty, the Warranty itself does not confer any new rights to Kmart. We find this argument unpersuasive.

A bilateral obligation assumed by each one of the parties to the contract, has, as its consideration, the promise offered in exchange, and both parties must be bound based on mutual consideration that yields either a benefit or a detriment to each party. See Soto-Fonalledas, 640 F.3d at 475. The provision contained in the Construction Contract requiring Dow Roofing to issue a Warranty does not confer any specific rights to Kmart arising under the Warranty. That is to say, the source of the remedies available to Kmart is not found in the Construction Contract but on the Warranty itself. Thus, Kmart's lack of consideration argument is erroneous.

Having found that there is definite cause for the parties' obligations, the Court looks into the object of the Contract. As with the "cause" requirement, we find that the Warranty also has an object, namely, to provide a remedy to Kmart in case of leaks in the roof manufactured and installed by Dow Roofing.

Because all the requirements for a Contract under Puerto Rico law are present here, the Court concludes that the parties entered into a valid arbitration agreement. Next, we examine whether the dispute falls within the scope of that arbitration agreement.

Congress enacted the Federal Arbitration Act (FAA) to promote a liberal federal policy favoring arbitration and to guarantee that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See Constructora Andrade Gutierrez, S.A. v. American Intern. Ins. Co. of Puerto Rico, 467 F.3d 38 (1st Cir. 2006) (citing Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551-52 (1st Cir.2005) (internal citations omitted)).

It is axiomatic that arbitration is a creature of contract. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582,

80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Where there is a validly formed and enforceable arbitration agreement, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); AT & T Techs., 475 U.S. at 648–49, 106 S.Ct. 1415)).

Our focus in this inquiry is to determine and effectuate the parties' intent, not to substitute our own preferences. See Municipality of San Juan v. Corporación Para El Fomento Económico De La Ciudad Capital, 415 F.3d 145, 151 (1st Cir.2005); Unite Here Local 217 v. Sage Hospitality Resources, 642 F.3d 255 (1st Cir. 2011).

In construing the Arbitration Clause, we are guided by the following principles. If "the terms of [the Arbitration Clause], its conditions and exclusions, are clear and specific, and leave no room for ambiguity or for diverse interpretations, they should be thus applied." See Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc., 1991 WL 735351 (P.R.), 128 D.P.R. 842, 852 (1991) (citing 31 P.R. Laws Ann. tit. 31, § 3471 (2008) ("If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail")). Furthermore, consistent with the federal pro-arbitration policy, there is a presumption that "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." See Powershare, Inc. v. Syntel, Inc., 597 F.3d 10 (1st Cir. 2010)(citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. University, 489 U.S. 468, 475–76 (1989)).

According to the Warranty, Dow Roofing warrants to Kmart that it will "repair any leaks in the Stevens Roofing System" that is installed by an authorized contractor for a period of ten years from the date of the "substantial completion and acceptance of the Roofing System." See Docket No. 7-2 at ¶1.

Furthermore, the Warranty limits Stevens' liability to repair of the Roofing System as follows:

> If upon Stevens inspection, Stevens determines that the leaks in the Roofing System are caused by defects in the Stevens Roofing material or workmanship of the Stevens

>     Authorized Roofing Applicator (except as provided in
>     paragraph Nos. 3 and 4), Owner's remedies and Stevens
>     liability shall be limited to Stevens repair of the Roofing
>     System using methods determined to be suitable at Stevens
>     discretion, subject to the limitations set forth herein.

See Docket No. 7-2 at ¶2.

Applying the aforementioned principles, we find that the terms of the arbitration clause are clear, specific and leave no room for reasonable diverse interpretations. The language quoted above demonstrates intent to cover a broad scope of claims under the arbitration agreement. See e.g., Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221-22 (11th Cir. 2000)(holding such language as 'any dispute' unequivocal and all-encompassing). Coupled with the strong federal pro-arbitration policy, the Court is convinced that the dispute falls squarely within the scope of the arbitration clause.

The final step of the inquiry is whether the party seeking arbitration forum has not waived its right. Dow Roofing filed a timely motion to compel arbitration and nothing in the record points to any waiver of its right to arbitrate the instant dispute.

Courts have stated that "waiver is not to be lightly inferred, and mere delay in seeking arbitration without some resultant prejudice to a party cannot carry the day." See Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 293 (1st Cir. 1986). Kmart has made no such claim. Thus, we find that the last requirement is satisfied.

**B. Res Judicata**

In its Motion to Dismiss, Dow Roofing invokes the doctrine of res judicata as a second reason why plaintiffs' claims should be dismissed. Dow Roofing makes reference to a complaint that Kmart filed against the same defendants in the case titled *Kmart Corp. v. Dow Roofing Systems, LLC*, No. 11-1310 (JAF), 2012 WL 967476 (D.P.R.2012). The case concerned a dispute between Kmart and Dow Roofing regarding leakage in the roof of a Kmart store located in Route 2, KM 149.5, Mayaguez, Puerto Rico ("the Mayaguez case").

The Court ultimately dismissed the latter pursuant to the Federal Arbitration Act. Hence, Dow Roofing asserts that the present claim is barred as a result of the judgment in the 2012 case. Kmart counters that there is no identity of claims, as required for a res judicata defense

and thus Dow Roofing may not claim that the issue has been previously adjudicated.

The doctrine of res judicata dictates that "a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action." See Haag v. United States, 589 F.3d 43, 45(1st Cir.2009). Res judicata commonly attaches if three requirements are discernibly present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." See Havercombe v. Dep't of Educ. of P.R., 250 F.3d 1, 3 (1st Cir. 2001) (citing Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991)).

We agree with Kmart that the requirements for res judicata to take effect have not been met. In the earlier case, the Court did not conduct a substantive analysis of the validity of the Mayaguez Warranty because Kmart did not raise the same challenges to the Warranty that have been at the heart of the present action. The Court's holding in the Mayaguez case is limited to the scope of the arbitration agreement included in that particular warranty. Since the Court did not rule on the enforceability of the Warranty and did not discuss the defenses of lack of consent and consideration which are the cornerstones of Kmart's arguments in the present action, the Court's earlier ruling as to the Mayaguez Warranty is not an adjudication of the issues now before us.

### III. CONCLUSION

Based on the foregoing, the Court finds that the arbitration clause included in the Warranty signed by Kmart and Dow Roofing is valid and enforceable. Therefore, the Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, December 2, 2013.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**